## TAYLOR v. TAYLOR.

(*Supreme Court, General Term, First Department.   December 29, 1890.*)

1. HUSBAND AND WIFE—REAL ESTATE PURCHASED BY WIFE—ACTION TO COMPEL CONVEYANCE.

In an action by a husband to compel a conveyance to him by his wife of real property alleged to have been purchased by her with his money, he testified to confessions by her to him that she had taken the money from his safe, and an employe testified that he had seen her take money from the safe nearly every day he was on duty.   The wife denied the confessions, as well as the taking of the money; and proof of her deposits in and drafts on various savings banks showed a probability that she paid for the property out of money belonging to herself.   *Held*, that the evidence for plaintiff was not sufficiently clear and well sustained to deprive the wife of the effect of the absolute deed to her.

2. SAME—EVIDENCE.

In such action, evidence of additions and repairs made by the wife with money obtained on mortgage of the property, while the husband resided with her thereon, is admissible to show his acquiescence in her title; and the cost of such additions and repairs is also pertinent.

3. APPEAL—HARMLESS ERROR.

The admission of evidence, against plaintiff's objection, that the wife, having subsequently leased other property, went into business under the lease, although not material, is not ground for reversal, where it could not have been detrimental to plaintiff's case.

4. SAME—REJECTION OF EVIDENCE—HARMLESS ERROR.

An exception to the exclusion of a question to a witness is not ground of reversal, on appeal, where subsequent testimony of the witness fully answers all that was called for.

5. SAME.

Allowing a question to a witness shown to have been in the service of the post-office, as to the circumstances under which he went into the post-office, although immaterial, is not ground for reversal, where it appears that no injury to the appellant resulted.

6. EVIDENCE—COMPETENCY.

At the trial of an action by a husband to compel his wife to convey to him certain land, she testified that she had conveyed the land to her sister. *Held,* that the answer to a question whether her sister paid her anything therefor was properly excluded, as no issue in regard to such conveyance was made in the pleadings.

Appeal from special term, New York county.

Action by Washington H. Taylor against Catherine Taylor. Plaintiff appeals from a judgment for defendant entered on trial by the court without a jury.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Noah Davis* and *Charles Wehle,* for appellant. *Fullerton & Rushmore,* (*Benj. Scharps* and *William Fullerton,* of counsel,) for respondent.

DANIELS, J. The parties are husband and wife, having been married about the year 1871, and continued to live together until the year 1887, when a separation took place. The action was commenced in 1883, and its object was to secure a conveyance from the defendant to the plaintiff of a lot of land, with the buildings thereon, situated on the north-east corner of Thirty-Third street and Ninth avenue, in the city of New York. The claim made by the plaintiff to the property arose out of the facts that he alleged himself to have been engaged in business as the keeper of a restaurant on Chatham street, or Park row, and that the defendant had abstracted and taken money from the safe used in the business without his knowledge or consent, and invested the money in this property. The deed was made to the defendant on the 3d of February, 1883, and recorded on the 5th of the same month. The plaintiff testified, when he discovered that the defendant had purchased this property, that he asked her where she got the money, and that she replied: "I may as well tell you. I took the money from the safe while you were lying asleep, but I took it for the benefit of both, and I am willing that you shall have the property transferred to you, on condition that you don't make any more trouble about it." And that she had further stated to him that she had taken $36,000, and then added: "Yes, I have taken more; I have taken $40,000, and I wish I had taken more." This evidence tended to maintain the plaintiff's action, although it is not entirely consistent with a preceding answer given by him, in which he stated that "the occasion when my wife took money was in 1883, after she purchased the Thirty-Third street property." The statements are somewhat in conflict, and tend to diminish the force of the plaintiff's evidence, in which he undertook to relate what he testified she had said to him about the abstraction of the money. Evidence was also given by the witness John Dougherty that he saw the defendant take money from the safe nearly every day he was on duty, and that he went to work near Christmas, in the year 1881, but in the evidence which

was given by the defendant, as a witness in her own behalf, she positively
denied all these statements, and added that she had discharged the witness
Dougherty from the business, from which it might be inferred that his feel-
ings were not entirely friendly towards herself. But without placing any
special reliance upon the effect of that circumstance, it may be safely affirmed
in his state of the evidence that the fact was not established that the money
of the plaintiff was used by the defendant in the purchase of this property;
and proof of that fact was essential to the ability of the plaintiff to maintain
this suit. These witnesses, as well as the others whose testimony was taken
upon the trial, were under the observation of the court, and, with that advan-
tage, the question was addressed to the judge presiding at the trial, as to which
was the most reliable in the statements made by them. What the plaintiff
relied upon were confessions testified by him to have been made by the de-
fendant, and they have been characterized on frequent occasions as weak and
undecisive evidence; and when contradicted, as they were in this instance by
the defendant, with a fair appearance or probability, they certainly lose still
more of their weight and effect, even if the fact should be considered to be
proved that the confessions or statements had been made by her. But in this
instance she did not rest upon a mere explanation, but interposed a positive
denial that she had made these statements to the plaintiff.

It has, however, upon the argument, been insisted that her testimony was
so far in conflict with the savings banks' books produced upon the trial as to
entitle the plaintiff to a determination of this essential fact in his favor. But
an examination of the accounts contained in these books fails to supply that
degree of support to the plaintiff's case as would entitle him to a reversal of
this judgment; for these accounts do not disclose the fact to be that the de-
fendant obtained the bulk of the money from the banks with which they were
kept to pay the purchase price of this property; and it is not pretended, and
could not very well be, that any credit had been given to her for the future
payment of any part of that money. The only draft made by the defendant
upon either one of these savings banks' accounts near to and prior to the date
of this deed was that for the sum of $3,063.73 upon the New-York Savings
Bank; and it is probable from this date that this amount did go into the pur-
chase of the real estate. But that fact affords the plaintiff no assistance, what-
ever, in the maintenance of the action. For it appears by the account that no
more than the sum of $273.70 was deposited to the credit of this account after
the lease taken by the plaintiff for the premises known as "110 Chatham Street,"
where his business was carried on, from which it was averred that these ab-
stractions of money were made by the defendant. The principal deposits, on
the contrary, were made in 1878 and 1880, when the defendant testifies she
herself carried on the business at this and another place. As to this fact there
was a conflict in the evidence, the plaintiff testifying that the business was
then his own, and carried on by him; and the evidence of various other wit-
nesses was taken during the trial to prove the fact that he was in the charge
and management of the business prior to, as well as after, the time when this
lease was taken by him. But that evidence was by no means controlling over
the fact, for the defendant testified that he was there in each as well as other
preceding businesses, so far as he devoted his attention to it, under her em-
ployment and authority; and the lease under which the business was first
done at 110 Chatham street was taken in the defendant's name, which is an
additional circumstance tending to support her testimony. To avoid its ef-
fect the plaintiff states that he took the lease in her name in compliance with
her request, but not for the purpose of enabling her to carry on the business.
This has been denied by the defendant, who stated the fact to be that she was
the person whose money was paid for the place, and that the business was
carried on by her with the aid and assistance of the plaintiff; and that, when
the new lease was to be and was taken in March, 1881, her directions to the

plaintiff were to take it in her name, and that she did not for some time after that understand that a change had been made, and the lease was taken to himself. This state of the evidence warranted the court in concluding that the money drawn from this bank on the 2d of February, 1883, which probably went into the purchase of this property, was the money of the defendant, and not that of the plaintiff. The case in this respect, as well as others, was for him to establish, and that he failed to do by this state of the evidence, especially as the law has required, to invalidate a conveyance of real estate, a degree of evidence which shall be clear and convincing beyond reasonable controversy. *Cadman* v. *Peter*, 118 U. S. 73, 78, 6 Sup. Ct. Rep. 957; *Erwin* v. *Curtis*, 43 Hun, 292. It is true that this rule was applied in these cases to absolute deeds alleged to be mortgages, but its authority appears to be equally applicable wherever one person may attempt to deprive another of the advantages of an absolute deed of real estate. The evidence to deprive the grantee of the effect of the instrument should be reasonably clear and well sustained. That was not the character of the proof given upon this trial, and as it was not improperly accepted and believed by the judge presiding at the trial, necessarily defeated the plaintiff's action. For the probabilities disclosed by the case are decidedly in favor of the existence of the fact that the defendant paid for this property out of moneys belonging to and controlled by herself.

The savings banks' accounts do not disclose drafts upon them out of which the purchase price of the property could have been paid. For in the other instances in which money was drawn by the defendant from the banks, near the time when the deed of this lot was received by her, the drafts were made and the money paid after the date of the deed, and after the 5th of February, the day on which it was actually recorded. It is quite probable, therefore, as the money must have been paid for the purchase of the property when the deed was received, that the defendant had other accounts besides those contained in the printed case, and from those sources, in part, obtained the money which was paid for the purchase price of this lot. It does appear from the evidence of the witness Augustus E. Butts that she loaned him the sum of $7,000 in the year 1879, and that he repaid her $3,000 in the fall of 1882; and the further sum of $4,500, including the balance of the loan and interest, as he thought, about March, 1883. It is not improbable that this witness was mistaken as to the final payment being made in March, 1883. There is at least a probability arising out of his indefinite statement that it was made prior to the time when this deed was taken, and, with the other sum of $3,000, went into the purchase price as a part of its consideration. For the bank accounts which were produced upon the trial do not show any credit of either of these amounts to the defendant, and there is a probability, therefore, that they were otherwise retained and applied by her in the manner already stated. That this sum was actually loaned by her at the time when her testimony is that she was carrying on the business for herself at 110 Chatham street is sustained, not only by the testimony of the witness who swore that he borrowed it, but also in great part by the testimony of the witness Henry J. Smith, who was present, and states that he saw the $4,500 paid to the defendant. As neither of these items went into the accounts which were produced, and no drafts were made upon these accounts which would supply the remaining sum required to make up the $15,000 for which the property was purchased, it can well be inferred that she obtained that difference from some other source, and that it included no money belonging to the plaintiff in this action. It does appear from the accounts that the defendant made large deposits in the New York Savings Bank in the year 1880, but that was a portion of the period when she testifies that this business was carried on by herself. And these large deposits made by her in her own personal account had a further tendency to maintain the correctness of her statement. For in her evidence, generally, her testimony was

to the effect that she had made at least the sum of $31,000 in this business and others in which she employed the plaintiff to represent her, prior to the time when the lease in 1881 was taken by her husband; and that of this amount she had accumulated $26,000 while the business was going on at 110 Chatham street, which the plaintiff himself concedes to have been a profitable business. After the commencement of the year 1883, and the execution and delivery of the deed to the defendant, large deposits were made by her in her savings bank accounts, but she testified that these were made by putting her money chiefly in the Irving Savings Institution, and not from any moneys obtained by her from this business; and her statements in this respect appear to be supported by the bank accounts, for in October, 1883, she did deposit with this institution the sum of $12,500, which was within $3,500 of the residue of the sum of $31,000, which she stated she had before purchasing the property in controversy. The accounts, instead of being in conflict with her evidence, are entirely consistent with that given by her upon the trial, for it is not contended that she took any money from the plaintiff's business after February, 1883; and the court was, therefore, fully warranted in accepting her testimony as the truthful disclosure of what had actually taken place; and the force of this evidence was in no manner diminished by the fact that, after the year 1883, large deposits appear to have been continued by herself in her accounts with this particular bank. The judge presiding at the trial, therefore, had sufficient proof before him to sustain his conclusions, not only that no part of the plaintiff's money went into the purchase price of this property, but that it was purchased and paid for by the defendant with her own money.

An exception was taken to the exclusion of the answer to the question propounded to the plaintiff, whether he at any time discovered the amount that the defendant had deposited in the various savings banks, and if so, how much. But this exception, without discussing or considering whether it was well taken or not, is fully disposed of by the evidence afterwards received from the plaintiff in the course of his own examination, in which he stated that he saw these bank books in 1879, and that there was deposited in the banks $36,000. That fully answered all that was expected to be obtained by the question which was overruled. It appeared by the evidence that the plaintiff was in the service of the post-office in 1874, and the inquiry was made of him under what circumstances he went into the post-office. This was objected to as being immaterial, but the question was allowed to be answered, notwithstanding the exception of the plaintiff. The answer in no manner affected the controversy between these parties. It had no relation whatever to this business, or the purchase or payment for this lot, and receiving it in the case produced no injury to the plaintiff in the prosecution of his action. It appeared, by the evidence of the defendant that she made an addition to the building standing upon the lot in the year 1885, at an expense of $8,000, for which she obtained the money upon a mortgage. During this time, and from early in the year 1883, the plaintiff resided with her upon these premises, and these additions were made with his knowledge. And it was a circumstance of some importance in the case to prove these facts, for they tended to indicate an acquiescence on the part of the plaintiff in her title to the land. In this connection she was asked what the repairs and additions amounted to. This was objected to as immaterial, but the answer was allowed to be taken, and to that the plaintiff excepted, and she stated that the contract price was $5,300. This fact, though not very important, was sufficiently pertinent to the use and management of this property to entitle the defendant to make proof of it as she was allowed to do. The defendant testified that she leased other premises in Chatham street in 1885; and, after giving this evidence, she was asked whether she went into business under that lease, and answered that she did. This was objected to as immaterial. The objection was overruled, and the plaintiff excepted. It probably was, as the objection stated, not material to

any part of the case to prove this fact, but receiving the evidence could have been of no possible detriment to the plaintiff's case, and for that reason the exception is of no benefit to him. Upon the trial she testified that she had conveyed this property to her sister, Margaret Barnes, and she was asked whether her sister paid her anything for conveying it to her. The answer to this question was excluded, and the plaintiff excepted. The ruling was entirely proper, for no issue was made by the pleadings in the case relative to this conveyance, or to its legal validity. There was, accordingly, no error in excluding this answer. These are the only exceptions which have been urged upon the attention of the court as including erroneous rulings made upon the trial, and it is entirely evident from them that the plaintiff has no just ground of complaint concerning these decisions. The case as it was disposed of at the trial was very well sustained, and the judgment should be affirmed, with costs.